**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW C. BICKEL,** **Plaintiff** | ) | |
| **vs.** | ) | **C.A.No. 09-115 Erie** |
| | ) | **District Judge Cohill** |
| **JAMES VECHECCO, et al,** **Defendants** | ) | **Magistrate Judge Baxter** |

**MAGISTRATE JUDGE'S**
**AMENDED**
**REPORT AND RECOMMENDATION**

## I RECOMMENDATION

It is respectfully recommended that the motion to dismiss, or alternatively, for summary judgment, filed by Defendant Graml [ECF No. 14] be granted. The Clerk of Courts should be directed to terminate Defendant Graml from this action.

It is further recommended that the motion for summary judgment filed by Defendant Vechecco [ECF No. 20] be granted in part and denied in part. More specifically, the motion for summary judgment should be granted as to the food contamination and inadequacy of dental care claims, and denied as to the retaliation claim.

Further, it is further recommended that this Court *sua sponte* dismiss Plaintiff's claim that his constitutional right to a grievance procedure has been violated.

It is further recommended that Plaintiff be allowed to file an amended complaint in order to name a government entity defendant on his Monell claim. Plaintiff should be directed to file that amended complaint within forty-five days.

By separate order, Plaintiff's Motion to Execute Judgment [ECF No. 39] and Plaintiff's Motion for Clarification [ECF No. 51] are addressed.

## II REPORT

### A. Relevant Procedural History

This action was filed in this Court on May 19, 2009, by way of removal by Defendant Graml.

Plaintiff, a state prisoner, originally brought this civil rights action in the Erie County Court of Common Pleas under 42 U.S.C. § 1983. Plaintiff alleges that his constitutional rights have been violated during his incarceration at the Erie County Prison. Plaintiff alleges that he injured his mouth after he bit into a metal shard in a cookie, that he received substandard medical/dental care after the injury, and that he was transferred to the Crawford County Correctional Facility in retaliation for grievances he filed about the dental care.[1] As relief, Plaintiff seeks various monetary and injunctive relief[2] from Defendants.

Named as Defendants are: James Vechecco[3], Warden of Erie County Prison; Mary Beth Graml, Erie County Prison's Food Service Supervisor; and John Doe and Jane Doe, providers of food products and ingredients to Erie County Prison's kitchen.[4]

On February 22, 2010, the undersigned issued a Report and Recommendation recommending that this case be dismissed against all Defendants. ECF No. 38. By Order dated March 30, 2010, District Judge Cohill rejected the Report and Recommendation and recommitted the matter. ECF No. 44. Additionally, in his Order, Judge Cohill indicated "we note that the R&R does not address whether amendment of the complaint would be futile." Id.

---

[1] Plaintiff also alleges that he was denied his constitutional right to a grievance process, however, a prisoner has no constitutional right to a grievance procedure. See Rivera v. Pennsylvania Dep't of Corrections, 2009 WL 3059048, at *2 (3d Cir. 2009); Caldwell v. Beard, 324 Fed.Appx 186 (3d Cir. 2009); McKeithan v. Beard, 322 Fed.Appx 194, 201 (3d Cir. 2009); Burnside v. Moser, 138 Fed.Appx 414, 516 (3d Cir. 2005). As such, any claim Plaintiff makes arising from the denial of an effective grievance system at Erie County Prison should be dismissed, *sua sponte,* for failing to state a claim upon which relief may be granted.

[2] Plaintiff's requests for injunctive relief against these Defendants have become moot due to Plaintiff's transfer away from Erie County Prison.

[3] The correct spelling of this Defendant's name is Veshecco.

[4] John and Jane Doe have not been identified or served and these unnamed Defendants were dismissed from this case pursuant to Rule 4 of the Federal Rules of Civil Procedure. See ECF Nos. 38, 44.

After this matter was recommitted, Plaintiff was advised, pursuant to Renchencki v. Williams, ___ F.3d ___, 2010 WL 3835217 (3d Cir. Oct. 4, 2010), that he could file a further opposition brief. Thereafter, Plaintiff filed an additional response in opposition to the pending dispositive motions as well as an affidavit in support. ECF No. 46. Defendants were then allowed to file reply briefs. ECF Nos. 48, 49.

**B. The Allegations**

At the Conclusion of his broad complaint, Plaintiff summarizes his Eighth and Fourteenth Amendment claims:

> Erie County Prisons officials are responsible for damaging Plaintiff's two teeth on May 7, 2008 with a metal shard inside food Plaintiff, was eating from the Erie County Prison's kitchen. Plaintiff has been treated with deliberate indifference and subjected to cruel and unnecessary pain, because of lack of a full time dental service with the means to save Plaintiff's two teeth.
>
> Erie County Prison's dental service only offers two options to Plaintiff, pulling a tooth, or a temporary filling. This is a violation of Plaintiff's Eighth and Fourteenth Amendment rights.
>
> John Doe #1/Jane Doe #2, the food supplier to Erie County Prison has shown deliberate indifference to Plaintiff by supplying a food product containing foreign objects, that caused Plaintiff's serious pain and suffering, by damaging two of Plaintiff's teeth, leaving the Plaintiff with no dental service available to treat Plaintiff.
>
> Mary Beth Graml, Erie County Prison's kitchen supervisor, prepared the Plaintiff's and other inmates meals, using undertrained inmates to work haistly (sic), in a (sic) unsanitary kitchen causing objects in ingredients to go undected (sic) causing Plaintiff to suffer severe pain and suffering with no means to alleviate Plaintiff's injuries. This is a violation of Plaintiff's Eighth and Fourteenth Amendment rights.

ECF No. 37, Plaintiff's Original Complaint, pages 27-28. Plaintiff also alleges that after he submitted a grievance complaining about the dental care, he was intentionally transferred to another institution. Id. Plaintiff organizes his claims into three separate counts: I) the violation of his Eighth Amendment rights or "deliberate indifference"; II) the violation of his Fourteenth Amendment rights to due process of law; and III) the violation of his right to the grievance system.

Defendants are represented separately. Defendant Graml has filed a motion to dismiss or

in the alternative, for summary judgment, while Defendant Veshecco has filed a motion for summary judgment. ECF Nos. 14, 20, respectively. Plaintiff has filed documents in opposition to both pending dispositive motions (ECF Nos. 34, 35, and 36) and Defendants have filed reply briefs (ECF Nos. 48, 49).

**C. Standards of Review**

**1) *Pro Se* Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

**2) Motion to dismiss pursuant to 12(b)(6)**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to

state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal/Phillips line of cases:

> To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.'

* * *

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to 'show' such an entitlement with its facts. As the Supreme Court instructed in Iqbal, '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.' This 'plausibility' requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11(3d Cir. 2009) (emphasis added) (internal citations omitted).

**3) Motion for summary judgment**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### D. Defendant Graml's Motion to Dismiss or in the alternative for Summary Judgment

Defendant Graml[5] moves to dismiss the claims against her based upon Plaintiff's failure to state a claim. Alternatively, Defendant Graml seeks summary judgment.

As to Defendant Graml, Plaintiff alleges:

> 31 - ... the Erie County Prison's Kitchen staff supervised by Mary Beth Graml, is hurried in it's efforts to complete the food trays for Plaintiff and other inmates, showing 'deliberate indifference' by supplying an infearior [sic] food product on a daily basis.
>
> 32 - ... the Erie County Prison food service supervised by Mary Beth Graml, is encouraged to cut corners, water down foods, and work in a precipate [sic] manner causing a careless and dangerous workplace, staffed with untrained and uncommited [sic] inmates, causing Plaintiff and other inmates to be subjected to meals prepared haphazadly [sic].
>
> 33 - It is custom policy of Erie County Prison officials to provide a food service supervised by Mary beth Graml, based on economics rather than quality of food product intended for Plaintiff and other inmates.
>
> 40 - Defendant Graml violated Plaintiff's Eighth Amendment rights by:
>
>> A - upon information and belief, Defendant Graml caused damage to Plaintiff's two teeth by not providing a clean, safe food preparation area in the Erie County Prison kitchen to prepare Plaintiff's and other inmates daily meals.
>>
>> B - upon information and belief, Defendant Graml did not provide adequate instruction and proper safety training to inmates who prepared Plaintiff's and other inmates daily trays.
>>
>> C - upon information and belief, Defendant Graml did not schedule and have preformed [sic] necessary maintenance, on machinery used to make Plaintiff's and other inmates food for their daily meals.
>
> 53 - Upon information and belief, Erie County Prison's Food Service prepares meals in a reckless manner using untrained and/or undertrained inmates to provide meals from the prison kitchen for consumption of Plaintiff and other inmates.
>
> * * *
>
> Mary Beth Graml, Erie County Prison's Kitchen Supervisor prepared the Plaintiff's and other inmates meals, using undertrained inmates to work haistly [sic], in a [sic] unsanitary kitchen causing objects in ingredients to go undetected causing Plaintiff to suffer severe pain and suffering with no means to aleviate [sic] Plaintiff's injuries. This is a violation of Plaintiff's Eighth and Fourteenth

---

[5] Graml explains that she is not an employee of the Erie County Prison, but is employed by Compass Group US, doing business as Canteen Correctional Services, a private corporation contracted to provide food service. See ECF No. 17.

Amendment rights.

ECF No. 37.[6]

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("In a § 1983 suit or a *Bivens* action-where masters do not answer for the torts of their servants-the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 2009 WL 5031366, at *2 (Dec. 23, 2009); Ali v. Howard, 2009 WL 3809625 (3d Cir. Nov.16, 2009). It is well-settled law that *respondeat superior* is not an "appropriate theory" for asserting supervisory liability in a Section 1983 civil rights action. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). In order for an individual defendant to be found liable in a civil rights action, the individual "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005). Plaintiff would need to allege that Defendants "[gave] personal direction or [had] actual knowledge [of] and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Despite all of the allegations of Plaintiff's lengthy complaint and briefs in opposition to the pending dispositive motions, Plaintiff has not alleged any facts supporting the personal involvement of Defendant Graml as he must do in order to state a claim against her. Defendant Graml is sued only in her capacity as supervisor of the kitchen staff. Merely alleging that this supervisory Defendant violated his constitutional rights is precisely the formulaic recitation of legal elements that the Twombly Court determined was insufficient to defeat a motion to dismiss.

---

[6] Plaintiff's claims involving the inadequacy of dental care and the retaliatory transfer are not being levied against Defendant Graml.

Accordingly, Defendant Graml's motion to dismiss for failure to state a claim should be granted. The Clerk of Courts should be directed to terminate her from this action.

### E. Warden Veshecco's Motion for Summary Judgment

Plaintiff's allegations against Defendant Warden Veshecco, while more plentiful, are no more specific as to his personal involvement in any of Plaintiff's claims. Plaintiff summarizes his allegations against Defendant Veshecco in this way:

> A - providing an unsafe eniorment [sic] causing the Plaintiff damage to, two of Plaintiff's teeth.
>
> B - cruel and unusual punishment by refusing to provide dental treatment to Plaintiff's serious injury;
>
> C - causing Plaintiff mental anguish by not informing Plaintiff of when his dental condition (caused by a metal shard [sic] found in a cookie on Erie County Prison food tray) would be treated to relieve the conscious pain.
>
> D - leaving Plaintiff in mental anguish by causing Plaintiff to be ever concious [sic] and concerned over every bite of food that Plaintiff eats, so not to endure furthure [sic] damaged, and unnecessary and wanton pain to Plaintiff's two damaged teeth.
>
> E - for 'deliberate indifference' to Plaintiff with malicious and intentional purpose, by transferring Plaintiff to another facility so as to not have to treat Plaintiff's dental condition.
>
> F - denial of dental service to examine the damages to Plaintiff, and provide the proper dental treatment to aleveate [sic] the pain and save the damaged teeth.
>
> G - promoting limited dental treatment to Plaintiff and other inmates.
>
> H - encouraging and limiting the food service of skilled personal [sic] with no quality safeguards due to economic conditions.
>
> I - wrongfull [sic] conduct to Plaintiff's dental condition with no reasonable steps being taken by Defendant Vechecco, and causing Plaintiff severe pain and suffering, over and above the pain that is intended by a state actor to be punishment is punishment [sic].
>
> J - not providing an adequate dental program for providing Plaintiff and other inmates dental treatment based on inmate population in propation to dental services.
>
> K - allowing the Plaintiff to endure the putrid taste of rotting food ozzing [sic] from the top left damaged tooth and subjecting Plaintiff to this teribile [sic] taste 24 hours a day.

ECF No. 37, ¶ 39.

Defendant Veshecco has not moved to dismiss for failure to state a claim pursuant to 12(b)(6), but instead has only moved for summary judgment pursuant to Rule 56. In support of the motion for summary judgment, this Defendant has produced only scant evidence - i.e., the affidavit of his co-Defendant Graml and the medical record of Plaintiff.

**1) Food Contamination**

Defendant Veshecco argues that he "did not have direct responsibility for food service operations or the day-to-day implantation [sic] of the food service policy," and cites to the Erie County Prison's Food Service Policy, as well as Graml's Affidavit. Further, Defendant Veshecco argues that Plaintiff has provided no evidence that Veshecco knew or should have known of any deviation from the Food Service Policy, as implemented, at any time prior to or at the time of Plaintiff's alleged injuries." ECF No. 49, page 6. Even in his own affidavit, Plaintiff has provided no evidence to the contrary as he must in order to defeat a motion for summary judgment. See Celotex, 477 U.S. at 322; Saldana, 260 F.3d at 232.

Accordingly, summary judgment should be granted in favor of Defendant Veshecco on the food contamination claim.

**2) Inadequacy of Dental Care**

Defendant Veshecco moves for summary judgment on the dental care claim arguing that he has not been deliberately indifferent to Plaintiff's dental health needs.

In the medical context, a constitutional violation under the Eighth Amendment[7] occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v.

[7] Plaintiff also alleges that his due process rights under the Fourteenth Amendment were violated. However, where a due process claim is identical to an Eighth Amendment claim, the plaintiff must "bring the claim pursuant to the more explicit constitutional amendment." Ordonez v. Yost, 289 Fed.Appx 553, 555 (3d Cir. 2008) citing Graham v. Connor, 490 U.S. 386, 395 (1989). Accordingly, this Court need not conduct a separate due process analysis as to the same factual allegations.

Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss." Peterson v. Achebe, 2007 WL 1381753, at * 3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).[8]

---

[8] However, mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). See also White, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir.1977).

Defendant Veshecco moves for summary judgment, inter alia, based upon his lack of involvement in the provision of dental care to inmates. ECF No. 21, page 7. Meanwhile, Plaintiff contends that by virtue of the grievance he filed on May 12th, Defendant Veshecco "knew or reasonably should have known" of his complaints challenging the adequacy of the dental care he received. ECF No. 46, page 4. However, non-medical prison officials, such as Defendant Warden Vechecco, cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [...] If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) quoting Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993).

Accordingly, Defendant Veshecco should be entitled to summary judgment as to the inadequacy of dental care claim.

**3) Retaliatory Transfer**

Next, Defendant Veshecco argues for summary judgment on the retaliation claim because Plaintiff has not sustained any damages. ECF No. 21, page 9. However, Defendant misunderstands the Third Circuit precedent on retaliation.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). See also Anderson v. Davila, 125 F.3d 48, 161 (3d Cir. 1997) ("An otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates

that it was undertaken in retaliation for his exercise of First Amendment rights.").

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials[9]; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). See also Holbrook v. Walters, 296 Fed. Appx 230, 233 (3d Cir. 2008).[10]

The case law does not require that Plaintiff suffer damages from the allegedly retaliatory transfer. Accordingly, Defendant Veshecco's motion for summary judgment should be denied in this regard.

**4) Qualified Immunity**

Alternatively, Defendant Veshecco argues that he should be entitled to qualified immunity. Because this Court is recommending the grant of summary judgment as to the food contamination and inadequacy of dental treatment claims on other grounds, this qualified immunity analysis will focus solely on Plaintiff's retaliation claim.

The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights. Harlow v.

---

[9] To show the "adverse action" necessary to fulfill the second prong, the prisoner plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225.

[10] Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

Fitzgerald, 457 U.S. 800, 818 (1982). An officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 530 U.S. 730, 739 (2002).[11]

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. This inquiry, the Court noted, must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity. See id. at 2156-57.

Curley, 278 F.3d at 277. See also Hope, 536 U.S. 730; Doe v. Delie, 257, F.3d 309 (3d Cir. 2001).

However, the rigid two-step inquiry set forth in Saucier has been relaxed by the Supreme

---

[11] In other words, "[w]hen an officer's actions give rise to a §1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as shield from suit. The primary purpose of affording public officials qualified immunity, thus insulating them from suit, is to protect them from undue interference with their duties and from potentially disabling threats of liability. The privilege of qualified immunity, however, can be overcome when state officials violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wright v. City of Philadelphia, 409 F.3d 595, 599-600 (3d Cir. 2005) (internal citations omitted), declined to follow on other grounds, Kossler v. Crisanti, 564 F.3d 181, 193 (3d Cir. 2009).

Court in Pearson v. Callahan, 555 U.S. 223 (2009). See also Bumgarner v. Hart, 2009 WL 567227 (3d Cir. 2009). As the Supreme Court explained: "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." Pearson, 555 U.S. at ___, 129 S.Ct. at 821. [12]

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. The Supreme Court has observed:

> for a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the length of pre-existing law the unlawfulness must be apparent.

---

[12] Another district court within this Circuit summarized the current state of the Saucier framework in the post-Pearson era:

> By noting that in many instances a court need not reach whether a constitutional violation is alleged to determine if qualified immunity is appropriate, the Court stated that the first prong "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." In addition, "[a]lthough the first prong of the Saucier procedure is intended to further the development of constitutional precedent," the first prong "create[s] a risk of bad decisionmaking," specifically in those instances where a court decides a rather nuanced constitutional claim early on in litigation where the factual basis for the claims have not been fully developed through discovery. Thus, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

DeLauri v. New Jersey Div. of State Police, 2009 WL 222983, at *5 (D.N.J. 2009) quoting Pearson, 129 S.Ct. at 818-20. See also Jarovits v. Monroe County Children and Youth Services, 2009 WL 3004044, at *3 (3d Cir. 2009) (proceeding directly to the second step of the Saucier analysis); Newland v. Reehorst, 2009 WL 1298414, at *2 (3d Cir. 2009) (same).

Hope, 536 U.S. at 739.

In this case, the legal precedent regarding a prisoner's right to be free from retaliation has been well established within this Circuit for many years. Carter, 292 F.3d 152 (3d Cir. 2002); Rauser, 241 F.3d 330 (3d Cir. 2001). Thus, a reasonable government officer would be on notice that the conduct alleged here was unlawful.

Accordingly, Defendant Veshecco is not entitled to qualified immunity as to Plaintiff's retaliation claim and the motion for summary judgment should be denied in this regard.

**F. Amendment of the Complaint**

Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure).

Throughout his complaint, Plaintiff repeatedly complains about the customs and policies of Erie County Prison. A municipality or county can be held liable for civil rights violations if a plaintiff establishes that the challenged conduct was a result of a government entity's official policy, custom or practice. Monell, 436 U.S. at 694.[13] A *Monell* claim is only appropriate as to a government entity defendant and not individual defendants. See Moriarty v. Rendell, 2009

[13] To state a viable claim under section 1983 against a municipality, a plaintiff must allege that he was injured as the result of a "policy or custom" of the entity-defendant. Monell, 436 U.S. 691. A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

WL 1458201, at * 3 (M.D.Pa. 2009) ("The *Monell* standard, however, applies to the liability of municipalities, not individuals."). Here, Plaintiff has not named any government entity as a party to this lawsuit.

This Court liberally construes Plaintiff's complaint as raising a custom or practice allegation regarding the provision of dental care based upon economic rather than health considerations. Plaintiff should be allowed to amend his complaint to name a government entity as a defendant on this Monell claim.

## III CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss, or alternatively, for summary judgment, filed by Defendant Graml [ECF No. 14] be granted. The Clerk of Courts should be directed to terminate Defendant Graml from this action.

It is further recommended that the motion for summary judgment filed by Defendant Vechecco [ECF No. 20] be granted in part and denied in part. More specifically, the motion for summary judgment should be granted as to the food contamination and inadequacy of dental care claims, and denied as to the retaliation claim.

Further, it is further recommended that this Court sua sponte dismiss Plaintiff's claim that his constitutional right to a grievance procedure has been violated.

It is further recommended that Plaintiff be allowed to file an amended complaint in order to name a government entity defendant on his Monell claim. Plaintiff should be directed to file that amended complaint within forty-five days.

By separate order, Plaintiff's Motion to Execute Judgment [ECF No. 39] and Plaintiff's Motion for Clarification [ECF No. 51] are addressed.

In accordance with Fed.R.Civ.P. 72, the parties are allowed fourteen (14) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to

respond thereto. Failure to file timely objections may constitute a waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 2, 2011